UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

STAN LABER,
Plaintiff,

Case No.

Jury Trial

vs.

LLOYD J. AUSTIN, III, SECRETARY,
UNITED STATES DEPARTMENT OF
DEFENSE,
Defendant, in his official capacity

**CIVIL RIGHTS COMPLAINT**

**Parties**

Plaintiff Stan Laber (Laber) is a retired Federal employee who applied for multiple job vacancies with DCMA but was rejected. Each rejection is a separate cause of action. Plaintiff is located at 321 S. Main. Ave., Albany. NY 12209

Defendant is LLOYD J. AUSTIN, III, SECRETARY of Defense, in his official capacity, is the head of the Defense Contract Management Agency (DCMA). Defendant is located at 1000 Defense Pentagon, Washington, DC 20301-1000

## Jurisdiction

The court has the authority to hear these matters based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. The law was violated when Laber was not selected for each vacancy. Laber has met the exhaustion requirements of 29 CFR 1614 because he sought timely administrative relief, received a final EEOC decision, and now appeals the charges he brought to DCMA for a de novo decision.

## Venue

A Title VII action "maybe brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district

in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." All job opportunity announcements begin with "SWH8". This indicates that all of the recruitments were conducted by the AST (Army Services Team). This is the same team responsible for recruitments in dispute in Plaintiff's Case 6:18-cv-01351-JWB and the Defendant is identical.

Venue is proper in the Kansas District because each cause of action herein is based on an adverse personnel action by the defendant whose employment records, relevant to its unlawful employment practice, are maintained and administered at Ft. Riley, Kansas. Every cause of action was either initiated or closed by personnel located at Ft. Riley Kansas and resulted in personnel records that were created at Ft. Riley, Kansas where they are currently administered and maintained. Every employment practice or action alleged to have been committed was by persons who coordinated their activities through the personnel office at Ft. Riley Kansas. A jury trial on each cause of action is requested.

**Introduction**

Laber alleges that the Defendant intentionally discriminated against him because of his sex, religion, and reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq

1. On August 16, 1981, Laber was first employed as a GS-0305-03 File Clerk with DCMA when it was titled as the Defense Contracting Management Command (DCMC) under the Defense Logistics Agency (DLA).

2. Laber was hired in the clerk position to resolve his informal EEO complaint that the selecting official had advised him that he couldn't be hired because the work was only "appropriate for a woman".

3. Laber was later promoted to a GS-1910-05/07/09 Quality Assurance Specialist (Electronics) position, and to a GS-1150-11 Industrial Specialist position, as of July 1985.

4. Laber voluntarily transferred to the Army for five years until he transferred back to DCMC from approximately 1990 to 1991 as a Program Analyst, GS-0343-13 at its headquarters in Alexandria VA to help manage DoD's investment in Information Technology acquisition programs.

5. Laber was next employed for a short time with the Army, but because of a Reduction in Force (RIF), he was mandatorily placed with DCMC as a GS-1102-12 Procurement

Analyst at its Chicago office from approximately 1991 to 1994 when he was detailed to DCMC's office in Herzliyya, Israel from June 1994 to June 1996.

6. Laber returned to DCMC in 1996 as Management Analyst, GS-0343-12 Performance Improvement Officer (PIO) in Chicago, IL

7. Laber filed numerous EEO complaints and lawsuits against DCMC during the period 1998 to 2000 when DCMC became DCMA (Defense Contract Management Contracting Command.)

8. Laber gained a reputation within DCMCA for being an EEO "frequent filer" during the above period.

9. On July 09, 1999, Laber's supervisor, Jerry Pike (Pike), issued him a notice of proposed removal for allegedly violating ethics rules and other reasons which Pike rescinded on October 04, 1999.

10. Laber alleged that his proposed removal was motivated by his protected EEO activity.

11. Pike alleged to others that Laber was a difficult person to be around because of his [Laber's] propensity to file EEO complaints or EEO suits. Pike also alleged to others that Laber's EEO complaints were frivolous.

12. On January 27, 2000, Pike again proposed to remove Laber from government service.

13. To avoid removal, Laber voluntarily proposed that he accept an Army position in Germany.

14. DCMA agreed to rescind its latest proposed removal letter provided Laber transfer to the Army Contracting Command in Wiesbaden Germany as a Contract Specialist GS-1102-11 or other employment.

15. In March, 2000, DCMC separated from DLA and became its own executive agency and was retitled as the Defense Contract Management Agency (DCMA).

16. On October 23, 2000, Laber transferred to the Army in Germany, without return rights to DCMA.

17. On February 07, 2002, an unidentified DCMA attorney shared the case file that DCMA had developed for Laber's removal with Attorney Michael Harbart (Harbart).

18. Harbart was an attorney at the Army Contracting Command in Germany where Laber was then employed.

19. The DCMA attorney suggested that Harbart use the case file to remove Laber from Army employment. The Army declined.

20. Based on knowledge and belief, on March 02, 2000, DCMA instituted procedures to prevent Laber from applying for DCMA vacancies.

21. Based on knowledge and belief, DCMA discriminatorily continues to prevent Laber's reemployment.

22. Based on knowledge and belief, as of March 2000, all DCMA human resource personnelists, their supervisors, and certain DCMA selecting officials, became aware, and continue to be aware, of Laber's prior and current protected activities.

23. Laber began seeking employment with DCMA in 2013 and continues to seek employment with DCMA and other employers, inside and outside the Government.

24. Laber filed similar EEO claims against DCMA and other Federal agencies for other vacancies which are currently in the administrative phase.

25. Laber has other active civil court and administrative claims against the Defendant, primarily at the EEOC/OFO.

**Statements of Fact Regarding Multiple Causes of Action**

The following facts apply to each of the "**Specific Claims of Non-selection** " below as if added separately to each claim.

26. At the time of the events giving rise to this complaint, Laber, a Jewish male born in 1945 with prior EEO protected activity, was employed by the Defendant as a DAWIA (Defense Acquisition Workforce Improvement Act) Contract Specialist, IA-1102-04, at a DoD (Department of Defense) Combat Support Agency (CSA) in Virginia.

27. DCMA is a different DoD CSA with offices located at various US cities and overseas locations. Its combat support mission is to ensure timely delivery of quality products, and providing relevant acquisition insight supporting affordability and readiness.

28. In early 2014, Laber sought to be reassigned to DCMA, by applying for DCMA vacancies at offices outside of Virginia.

29. On December 09, 2014, Laber requested DCMA EEO counseling because he believed he was a victim of illegal discrimination when he was not selected for many vacancies.

30. On January 09, 2015, Laber retired from government service but continued applying for DCMA vacancies to reenter government service.

31. On February 27, 2015, Laber filed a formal complaint alleging that DCMA discriminated against him on the bases of his age, sex, religion, and reprisal for prior protected activity under Title VII of the Civil Rights Act of 1964 and, because of his age under the Age Discrimination in Employment Act of 1967 (ADEA) for 31 vacancies in 2014 and 2015. He alleged that each numbered charge represented a cause of action where he was unlawfully rejected by the Defendant under each law.

32. On February 10, 2023, this Court published a jury decision that stated that Plaintiff was discriminated against by DCMA selecting officials based on Title VII when he was not selected for a GS-1102-11 Contract Specialist position in November 2014, one of the 31 claims. The jury found that absent the discrimination, Plaintiff would have been selected for the position. No final judgment has been issued on Plaintiff's other claims to date. Per 29 CFR1614.501, discrimination by the agency establishes that as of November 7, 2014 forward, Plaintiff should be deemed to have served in the position he sought continuously to the present.

33. Each charge is brought within 90 days of the date the EEOC issued its final decision.

34. Each charge was previously claimed at the administrative level.

35. Each charge was exhausted at the EEOC via its final decision.

36. In each charge where Laber was rated or ranked lower based on his interview, he alleges that DCMA failed to articulate a non-discriminatory reason for the employment because it did not explain the interview scores, how they were related to the resume scores, or how or Laber was determined to be rejected.

37. In each charge where Laber was treated less favorably than other applicants not of his protected class, he alleges disparate treatment because of his protected characteristics.

38. In each charge where Laber was rated or ranked lower in an interview, he alleges that the questions themselves were not related to the position description and had a disparate impact on external candidates who were unfamiliar with the unique local jargon and practices.

39. Laber achieved most of his career goals prior to retirement and did not pursue employment to further enhance his career but to increase his years of service.

40. DCMA is in possession of all of the relevant records.

41. The wrongs alleged are continuing to occur at the present time.

42. DCMA's investigation was deficient in order to prevent Laber from pleading the facts of his case or meet his burden.

43. DCMA's Report of Investigation (ROI) withheld the applications of those applicants with whom Laber competed, except for some applicants who were selected.

44. None of the applications in the ROI was complete, including Laber's applications.

45. Usually, excluded were the following items: Documents the applicant submitted to establish his/her eligibility such as an SF-50; a USAJOBS questionnaire; transcripts when there was a positive education requirement for GS-1515 and GS-1102 positions;

46. attachments that the applicant chose to submit such as a cover letter or a writing sample or evaluation, or certificates, or training, or awards.

47. Until such time that Laber is able to better refine, through discovery, which bases operated in each action, he alleges sex, religion, and retaliation discrimination under Title VII.

48. On knowledge and belief, Laber consulted with a DCMA Equal Employment Office (EEO) Counselor within 45 days of becoming aware that discrimination had occurred in regard to each claim in order to try to informally resolve each matter per 29 C.F.R. § 1614.105(a).

49. On knowledge and belief, after attempting to resolve each claim informally, Laber filed a formal complaint which gave DCMA the information it needed to investigate and resolve the disputes.

50. On knowledge and belief, Laber cooperated in good faith to provide all relevant available information to DCMA to evaluate the merits of each charge.

51. On knowledge and belief, each adverse action or nonselection included either a failure to hire, failure to interview, failure to consider, failure to refer to the selecting official, failure to treat Laber as favorably as other applicants, failure to follow applicable regulations for consideration, or simply rejected Laber because of one or

more of his known protected characteristics.

52. On knowledge and belief, Laber's sex, religion and prior protected activity were known to each selecting official who took action against him, including Human Resource specialists, based on his/her direct or indirect knowledge of a large number of Laber's prior EEO and complaints, settlements, cases on appeal, and civil court cases against the Defendant, DCMA, and other DoD agencies.

53. Each one of these cases revealed his sex, religion, and his prior protected activity under the relevant acts. Laber's high volume complaint activity and appeals is well documented on the internet. A search on "Stan Laber", even without any reference to EEO activity, immediately returns Laber's EEO activity, sex, and religion as early as the 1980s and continues presently. The conduct of internet searches is common practice of employers and DCMA has no policy preventing this practice.

54. On knowledge and belief, hiring officials for contract specialist positions are the most frequent users of internet searches regarding applicants. This is because most government contract specialists' names are mandatorily made available in an online Government Acquisition Portal, FedBizOpps, if the contract specialist played a significant role in the solicitation.

55. Based on knowledge and belief, Laber alleges that one or more of selecting officials for each vacancy searched the internet and found Laber's EEO complaint activity.

56. On faith and belief, while only one official admitted to searching the internet, discovery and strident cross examination is expected to reveal many more instances.

57. Laber's sex was evident from his name and the use of male pronouns in his evaluations and award citations.

58. On faith and belief, anyone who performed the above search, found Laber's EEO complaint activity on the internet.

59. On faith and belief, anyone who read about Laber's protected activity became aware of to his sex, religion, and additional details of his protected activity itself.

60. On faith and belief, anyone who found Laber's protected activity advised others of Laber's protected activity, advised colleagues and supervisors of Laber's protected activity.

61. On faith and belief, any adverse decision based on Laber's protected activity was discriminatory.

62. Whenever Laber was asked about his availability for travel, he normally mentioned his Jewish Sabbath observance, thus informing panelists of his religion and possible need for an accommodation.

63. Whenever Laber was asked by any selecting official about his experience in Israel, he included the fact that he sought the assignment because he is Jewish.

64. Whenever Laber interviewed in person, he wore distinctly Jewish garb such as a skullcap and his beard which is full and untrimmed, hallmarks of Jewish religious observance.

65. Laber alleges that in addition to the discrimination that occurred during the consideration of each application and eventual rejection thereof, each selecting official, human resource specialist, EEO official, and DCMA representative retaliated against Complaint after he or she learned of a complaint that Laber made or said he would make.

66. The above acts of retaliation were revealed during the investigation and consisted of such acts as providing false or incomplete information to the investigator, freely discussing Laber's complaints and details of those complaints with persons for no legitimate business purpose, making derogatory remarks that were untrue, or purposely rating him, his application, or his interview performance lower than it should have been absent discrimination.

67. In retaliation for his prior EEO participation, selecting officials, (defined as HR specialists, their supervisors, panel members and their supervisors, and reviewing officials and their supervisors) searched Plaintiff's name on the internet and social media and thereby became of his protected activity and as a result of learning of this activity, discriminated against him in every personnel action, evaluation, scoring, or other treatment to ensure his rejection.

68. A typical example of the above retaliation occurred when the investigator or supervisor asked witnesses why Laber was not selected, or not referred, or not interviewed. They responded with comments and sworn affidavits that contained false, misleading, and derogatory information to cover up discriminatory acts they committed or knew of that might not have been discriminatory at all. By doing so, they reprised

69. against Laber based on the simple fact he had filed the instant informal or formal complaint. This created animosity where none previously existed.

70. Either because of their personal participation or the participation of a colleague or individual involved in the administrative processing of his applications, EEO counseling, or investigations.

71. On faith and belief, Laber was the only applicant with prior EEO participation for every charge and therefore treated less favorably. "Less favorably" refers to final selectee(s) or any applicant referred, selected for interview, or any applicant who received further consideration where Laber was not granted such advancement in the evaluation process because of his protected bases.

72. Every performance evaluation in Laber's career was above average or at the equivalent median.

73. Based on the administrative record, Laber alleges that DCMA failed to preserve his application and the applications of other applicants.

74. Based on the administrative record, Laber alleges that DCMA failed to preserve the notes of selecting officials and personnelists.

75. Laber is unable to currently meet his burden to demonstrate how female applicants were treated more favorably than he was without reasonable discovery. This is because the administrative record contains insufficient demographic data on the applicants.

76. On faith and belief, Laber was the only Jewish applicant with prior complaints based on his religion.

77. On faith and belief, Laber completed the highest level of education of any applicant based on his graduate degree and PhD coursework as reported on his application.

78. On faith and belief, Laber completed the highest number of training courses documented in any candidate's application.

79. Laber completed over 200 courses related to acquisition as shown in his application.

80. Laber held a top secret (TS) clearance from 2003 to 2015 and had experience administering classified contracts during that period.

81. In regard to every vacancy where transcripts were required to document completion of a minimum positive education requirement, Laber met the requirement by demonstrating his completion of the requirement based on his university transcripts submitted with each application.

82. In applications where GS-1150 Industrial Specialist experience was relevant, Laber sometimes included a mention of his prior EEO complaint and decision which determined that he was to be "deemed to have served" as a GS-1150-11 for two years in the early 1990s.

83. Laber completed BS and MA degrees and PhD coursework (not the PhD degree) as shown in his application

84. Laber held three DAWIA certificates at Level 3 plus three other certificates as demonstrated in his application for the vacancy.

85. Laber received awards for nearly every year of service as shown in his application.

86. Laber completed 24 semester hours in in a combination of the following fields: accounting, business, finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management within a degree program the degree or in addition to the degree as demonstrated in the transcripts in his application to qualify for the Contract Specialist positive education requirement.

87. Laber included his most recent performance appraisal in each application.

88. Laber's evaluation was and overall "Excellent".

89. Laber was the only applicant whose resume demonstrated knowledge of the FAR and DFARS contracting regulations based on his experience as a "GS-1102 Procurement Analyst" who provided advice to acquisition specialists, program managers, and contract specialists.

90. Laber's USAJOBS questionnaire score was 100, the highest possible score.

91. But for his sex, religion, religious beliefs, and reprisal for his protected activity, Laber would have been selected for the vacancy.

92. Laber's application demonstrated the highest number of Defense Acquisition Workforce Improvement Act (DAWIA) Certifications held by any applicant.

93. Laber held various contract warrants for different agencies, including "unlimited" and "limited" [dollar value] warrants.

94. Laber completed a full four-year or longer curriculum in an accredited college or university leading to a bachelor's or higher degree with a course of study that included 24 semester hours of coursework in operations research, mathematics, logic, or other subjects for which college-level mathematics or statistics was a prerequisite. At least 3 of the 24 semester hours were in calculus to qualify for the Operations Research Analyst positive education requirement.

95. Laber has had no interim earnings for the period January 09, 2015 to the present.

**Specific Claims of Non-selection**

96. On March 13, 2018, he became aware that he was not selected for the GS-1102-12, Contract Administrator position, JOA: SWH817P63149964137EA, Syracuse, New York.

97. On April 30, 2018, he became aware that he was not referred for the NH-1102-04, Supervisory Contract Specialist position, JOA: SWH819PH4093183334, Boston, Massachusetts.

98. On November 28, 2018, he became aware that he was not referred for the GS-1515-12, Interdisciplinary Engineer/Operations Research Analyst position, JOA: SWH818P62082804229EA, Syracuse, New York.

99. On December 7, 2018, he became aware that he was not selected for the GS-1102-11, Contract Administrator position, JOA: SWH818P71739157557EA, Milwaukee, Wisconsin.

100. On December 10, 2018, he became aware that he was not selected for the GS-1515-12, Operations Research Analyst position, JOA: SWH818P62344652652EA, Pittsfield, Massachusetts.

101. On December 31, 2018, he became aware that he was not selected for the GS-1102-11, Contract Administrator position, JOA: SWH818P61847920289EA, Pittsfield, Massachusetts.

102. On February 4, 2019, he became aware that he was not selected for the GS-1910-12, Quality Assurance Specialist position, JOA: SWH818P62916076790, Watervliet, New York.

103. On January 7, 2019, he became aware that he was not referred for the GS-1102-12, Contract Administrator position, JOA: SWH818PH2572249181, location negotiable after selection, United States.

104. On January 9, 2019, he became aware that he was not selected for the GS-1102-12, Contract Price/Cost Analyst position, JOA: SWH818P71179850006EA-R, Milwaukee, Wisconsin.

105. On March 19, 2019, he became aware that he was not selected for the NH-2210-3, Information Technology (IT) specialist position, JOA: SWH819P43437888107, Endicott, New York.

106. On March 21, 2019, he became aware that he was not selected for the GS-1910-

11, Quality Assurance Specialist position, JOA: 18P62344650811EA, Watervliet, New York.

107. On June 21, 2019, he became aware that he was not selected for the GS-1910-11, Quality Assurance Specialist position, JOA: SWH819P63568578573EA, Pittsfield, Massachusetts.

**Request for Relief for Each Claim**

108. Laber requests declarative and injunctive relief. He requests to be made whole as if the discrimination did not occur. He seeks instatement to each position he would have hired into absent the discrimination, with appropriate promotions. All forms of relief are requested to the maximum extent allowed by the relevant laws, rules, regulations, and the determinations of the court or jury.

109. Additionally, he requests all pecuniary, non-pecuniary, compensatory damages, and payments for emotional pain, physical pain, suffering, mental anguish, and loss of enjoyment of life.

110. Plaintiff seeks his costs and expenses to pursue these matters in this court and in the preceding administrative levels. Plaintiff requests missed wages, employment benefits, lost promotions, awards, training, back pay, front pay, compensatory damages, interest, restoration of his employment benefits, relocation costs, social security, thrift savings plan, retirement accounts, social security, sick leave, annual leave, correction of employment records via SF-50s, and additional sums if tax consequences occur. Laber requests that all back pay be calculated based on Defendant's regulations at DoD 7000.14-R, Financial Management Regulation if such regulations result in more economic relief than some other method determined by the court. Plaintiff reserves the right to add additional relief based on future discovery.

**Related Litigation**

111. Plaintiff is party to the following civil actions: 1:22-cv-00145-MSN-TCB Laber v DoD and 6:18-cv-01351-JWB.

**Jury Trial**

Jury trial is requested at Wichita, Kansas.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

Stan Laber, Plaintiff, Pro Se
321 S. Main Ave
Albany, NY 12209

**Certificate of Service**

On 2/17/23 Plaintiff sent this complaint with request for Jury Trial to the clerk of the court via email.

Stan Laber, Plaintiff, Pro Se
321 S. Main Ave
Albany, NY 12209